## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**TRINET USA, INC.**

    **Plaintiff,**

**vs.**                           **CASE NO. _____**

**KANE PIGLIAVENTO,**

    **Defendant.**

_____/

## COMPLAINT

**COMES NOW** Plaintiff TriNet USA, Inc. ("TriNet") and files this Complaint against Defendant Kane Pigliavento ("Pigliavento"), and alleges as follows:

### NATURE OF THE ACTION

1.    Pigliavento is a former TriNet Director who voluntarily resigned from TriNet to serve as a Regional Sales Manager for one of TriNet's competitors, Vensure Employer Services ("Vensure"). Just days before informing TriNet of his resignation, Pigliavento unlawfully sent to his personal Gmail account a spreadsheet containing TriNet's highly-confidential information, including information regarding all of TriNet's financial services industry customers from 2018 to the present.

2.    This is an action for injunctive relief and damages arising from Pigliavento's misappropriation of TriNet's confidential business information and

trade secrets in violation of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 ("DTSA"), the Florida Uniform Trade Secrets Act, Fla. Stat. § 688.001, *et seq.* ("FUTSA"), and Florida's Deceptive and Unfair Trade Practices Act.  Pigliavento's improper conduct also constitutes a breach of his Proprietary Information and Inventions Agreement with TriNet as well as a breach of his fiduciary and other duties.

## THE PARTIES

3.     TriNet is a Delaware corporation with its principal place of business located in Dublin, California.

4.     Pigliavento was employed by TriNet from April 19, 2016 until he voluntarily resigned effective March 3, 2020.   While employed by TriNet, Pigliavento was based in Bradenton, Florida, and resided at 3502 Harlowe Run, Bradenton, Florida 34211.  Upon information and belief, Pigliavento continues to reside at and can be served at that address.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction of the subject matter of this action under 28 U.S.C. § 1331 in that this action arises under the laws of the United States; specifically, 18 U.S.C. § 1836.  This Court has supplemental jurisdiction over TriNet's state law claims pursuant to 28 U.S.C. § 1367.

6.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 because (i) a substantial portion of the events or omissions giving rise to TriNet's claims occurred in Bradenton, Florida; (ii) Pigliavento resides in Bradenton, Florida; and/or (iii) TriNet suffered injury in Bradenton, Florida.

## GENERAL ALLEGATIONS

7.     Pigliavento is a former TriNet Director, Small Business who voluntarily resigned from TriNet to serve as the Regional Sales Manager for one of TriNet's competitors, Vensure.  This case involves Pigliavento's improper and unlawful access, transmittal, disclosure, and/or use of TriNet's confidential information to benefit himself and his new employer Vensure.

8.     As described in more detail below, less than one week before resigning from TriNet to serve as a Regional Sales Manager for Vensure, Pigliavento improperly emailed to his personal Gmail email account a spreadsheet containing TriNet's highly-confidential sales information, including, without limitation, highly-confidential information about TriNet's financial services industry customers and the amount of revenues they generate.  Pigliavento was not authorized to send TriNet's highly-confidential information to himself, particularly as he was preparing to leave TriNet to work for one of its competitors.

9.     Pigliavento's improper access, transmittal, disclosure, and/or use of TriNet's confidential information to benefit his new employer, Vensure, constitutes

a breach of his Proprietary Information and Inventions Agreement ("PIIA"), TriNet's Security Policies (defined below), his fiduciary duty to TriNet, and state and federal law.

10.    Through this action, TriNet seeks to enjoin Pigliavento from further breaches and to recover the damages caused by his improper and unlawful actions.

## Background on TriNet's Business

11.    TriNet is a professional employer organization otherwise known as a "PEO."   PEOs like TriNet provide small and medium size businesses with full-service human resource solutions.  In other words, PEOs typically serve as an outside human resources department for small and medium-sized businesses that do not have or need an internal human resources department.

12.    TriNet offers customers a wide variety of human resource and related services, including, but not limited to, payroll administration, benefits consultation and management, and risk mitigation advice.

13.    The PEO industry is highly competitive.  PEOs, like TriNet, compete with other PEOs, like Vensure, to sell their human resource and related services often to the same type of small and medium-sized businesses.  Competition normally takes place through sales calls and sales pitches from individual sales employees like Pigliavento.

14.     PEOs typically do not charge their customers "list" or "rack" rates. Rather, the fees a customer pays are often highly negotiated and non-public.  For that reason, the fees a PEO charges a specific customer are not typically available in the public domain.

### Pigliavento's Employment By and Contracts with TriNet

15.     On or about April 19, 2016, TriNet hired Pigliavento as Manager Inside Sales for Small Business in TriNet's Bradenton, Florida office.

16.     As an Inside Sales Manager, Pigliavento's duties included, *inter alia*, identifying businesses that are prospective TriNet customers, developing and implementing sales strategies, soliciting businesses to purchase TriNet's products and services, managing a team of sales employees responsible for soliciting businesses to purchase TriNet's products and services and identifying, recruiting and hiring sales team members.  While employed by TriNet, Pigliavento focused on businesses in the financial services industry.

17.     As consideration for being employed by TriNet and receiving compensation in connection therewith, Pigliavento signed his PIIA.  A true and correct copy of Pigliavento's PIIA is attached hereto as **Exhibit A**.

18.     Pigliavento's PIIA contains numerous terms governing his access to, use, transmittal, and disclosure of TriNet's confidential information.

19.     For example, Paragraph 1 of Pigliavento's PIIA defines what TriNet deems as confidential information and governs Pigliavento's use of that information both during and after his employment.  Specifically, Paragraph 1 of Pigliavento's PIIA states, in part:

> **1.     Maintaining Confidential Company Information.**  I will not, during and after my employment with TriNet HR Corporation or any of its successors, subsidiaries, assigns, related companies and divisions (collectively, the "Company"), (i) directly or indirectly disclose to any person or entity, or use, except for the sole benefit of the Company, any of the Company's confidential or proprietary information or trade secrets (collectively, "Company Information")  . . . . Company Information shall include the Company's trade secrets; research and development plans or projects; data and reports; computer materials such as software programs, instructions, source and object code, and printouts; products[,] prospective products, inventions, developments, and discoveries; data compilations, development databases; business improvements; business plans (whether pursued or not); ideas; budgets; unpublished financial statements; licenses; pricing strategy and cost data; information regarding the skills and compensation of other employees of the Company; the personal identifying and protected health information of other employees of the Company, including worksite employees of TriNet customers; lists of current and potential customers of TriNet; strategies, forecasts and other marketing information and techniques; employment and recruiting strategies and processes; sales practices, strategies, methods, forecasts, compensation plans, and other sales information; investor information; and the identities of the Company's suppliers, vendors, and contractors, and all information about those supplier, vendor and contractor relationships such as contact person(s), pricing and other terms.

*See* Exhibit A, ¶ 1.

Throughout this Complaint, "Confidential Information" shall have the same meaning as "Company Information" in Pigliavento's PIIA.

20.     Pigliavento's PIIA required him to not only maintain the confidence of TriNet's Confidential Information, but also any confidential information that TriNet received from its customers.  Specifically, Paragraph 2 of Pigliavento's PIIA states:

> **2.     Third Party Information.**  I understand that the Company has in the past received, and in the future may receive from third parties, confidential or proprietary information ("Third Party Information"), subject to a duty on the Company's part to maintain the confidentiality of such information and to use it only for certain limited purposes. During and after my employment with the Company, I will hold all Third Party Information received by me in the strictest confidence and will not disclose it to anyone (other than Company personnel who need to know such information in connection with their work for the Company) or use it, expect in connection with my work for the Company.
>
> *See id.*, ¶ 2.

21.     Under Paragraph 4 of the PIIA, when Pigliavento resigned from TriNet, he was required to promptly return to TriNet all its property and Confidential Information:

> **4.     Return of Company Property.**  When I leave the employ of the Company, I will deliver to the Company (and will not keep in my possession, copy, or recreate or deliver to anyone else in whole or in part) any and all items including but not limited to files, drawings, notes, notebooks, memoranda, specifications, records, business plans and forecasts, financial information, sales materials, customer and prospective customer lists, reports, programs, proposals, specifications[,] computer-record information (including emails), tangible property (including but not limited to laptop/desktop computers, flash drives, CD-ROMs, cell phones, blackberries, tablets and other PDA devices), building entry/access cards, identification badges and keys, devices, and documents, together with all copies thereof (in whatever medium recorded) and any other property or material containing or disclosing Company Information or Third Party

Information.  I further agree that any property owned by the Company, wherever located, including disks and other storage media, computers, filing cabinets, desks/desk drawers, or lockers, is subject to inspection by Company personnel at any time during my employment and after, with or without notice.

*See id.*, ¶ 4.

22.    Effective in April 2019, Pigliavento's title was changed to Director of Sales for Small Business.  In that role, Pigliavento continued to be responsible for, *inter alia*, identifying businesses that are prospective TriNet customers, developing and implementing sales strategies, soliciting businesses to purchase TriNet's products and services, managing a team of sales employees responsible for soliciting businesses to purchase TriNet's products and services and identifying, recruiting and hiring sales team members.  While employed by TriNet, Pigliavento focused on businesses in the financial services industry.  As TriNet's Director of Sales for Small Business, Pigliavento remained focused on businesses in the financial services industry.

23.    Upon information and belief, by no later than February 2020, Pigliavento was in discussions with one of TriNet's competitors, Vensure, to leave TriNet and become employed by Vensure.

24.    On February 18, 2020, Pigliavento informed TriNet that he was voluntarily resigning from the company to work for Vensure.  According to

Pigliavento's LinkedIn page, he has worked for Vensure as a Regional Sales Manager since March 2020.

25.     On February 21, 2020, TriNet sent Pigliavento a letter confirming that his employment relationship with TriNet would end on March 3, 2020.  In that letter, TriNet reminded Pigliavento of his obligation to adhere to the postemployment obligations contained within his PIIA.  The letter also included a copy of the PIIA.

26.     On February 21, 2020, TriNet sent Pigliavento a separate letter regarding his post-employment legal obligations ("Legal Obligations Letter").  In that letter, TriNet again reminded Pigliavento of his obligations under the PIIA:

> **<u>Maintaining Confidential Company Information</u>.**  As an employee of TriNet, you had access to confidential and proprietary information and trade secrets of the company ("Company Information").  As a reminder, please ensure that you refrain from using or disclosing TriNet's Company Information in any way, as more fully described in the PIIA.  Company Information can include, by way of example, pricing strategy and cost data; the personally identifying and protected health information of Company . . . ; lists of current and potential customers of TriNet; strategies, forecasts, and other marketing information and techniques; employment and recruiting strategies and processes; and sales practices, strategies, methods, forecasts, compensation plans, and other sales information.

27.     The Legal Obligations Letter also stated:

> **<u>Return of Company Property</u>.**  You must return and not keep in your possession, copy, recreate, or deliver to anyone else any and all Company property, including but not limited to company records (hard and electronic copies, including for example business plans and forecasts, financial information, sales materials, customer and prospective customer lists, reports, programs, and proposals), tangible property (including but not limited to laptop/desktop computers, flash

drives, CD-ROMs, cell phones, smart phones, tablets and other PDA devices), building entry/access cards, identification badges and keys, devices, and documents, together with all copies thereof (in whatever medium recorded), and any other property or material containing or disclosing Company Information.

## **Pigliavento's Receipt of TriNet's Confidential Information**

28.    When Pigliavento was hired by TriNet, he acknowledged receipt of TriNet's Code of Business Conduct and Ethics ("Ethics Code").  Pigliavento reaffirmed his acknowledgement of the Ethics Code every year that he was employed by TriNet, most recently on November 13, 2019.

29.    Pursuant to the Ethics Code, Pigliavento agreed not to disclose and to protect TriNet's Confidential Information: "We are each also obligated to protect TriNet's trade secrets and other intellectual property, and to comply with our individual contractual obligations regarding non-disclosure of confidential information, along with other applicable restrictive covenants."

30.    The Ethics Code also put Pigliavento on notice that misappropriation of TriNet's Confidential Information is theft: "Misappropriation of TriNet funds, resources, and trade secrets is theft.  Any colleague who engages in such activity risks not only termination of employment with TriNet, but also criminal, civil, and contractual penalties."

31.    When Pigliavento commenced his employment with TriNet, he also acknowledged the TriNet Colleague Handbook (the "Handbook").  Like the Ethics

Code, Pigliavento acknowledged the Handbook after every major revision, most recently on October 16, 2018.

32.    By acknowledging the Handbook, Pigliavento agreed to follow all TriNet policies related to electronic communications, company devices and sharing information with third parties.

33.    One of TriNet's electronic communications policies is known as the TriNet's Technology Resources Acceptable Use Policy ("Technology Policy").

34.    Under Section D of the Technology Policy, Pigliavento was permitted to use and/or share TriNet's information only to the extent necessary to perform his job duties:[1]

> Colleagues may access, use or share Information only to the extent it is authorized and necessary to fulfill assigned job duties and only using Technology Resources.
>
> Colleagues should store Information using only methods approved by the Technology Department.  Colleagues may not store Information in any cloud-based system (e.g., Dropbox, iCloud, Google Drive, etc.) that has not previously been approved by the Technology Department. Colleagues may not use portable drives or other storage media to download or store Information for any purpose unless approved by the Technology Department.

---

[1] Under the Technology Policy, "Technology Resources" include: "individual computers and computing devices"; "[s]erver and network computers"; and internet and Wi-Fi.  They also include "[a]ll business information and data, including proprietary, confidential, trade secret and personal information and any other information and data related to TriNet or its customers that is created, stored or transmitted using Technology Resources," which the Technology Policy refers to collectively as "Information."

> Colleagues may not transmit, retrieve, or store information
> on their personal email systems.  Colleagues may not use
> personal e-mail to conduct TriNet business.

35.    The Technology Policy also prohibited Pigliavento from sharing

TriNet's proprietary, confidential, or trade secret information:

> Colleagues are prohibited from the following activities:
>  . . . .
>
> 2.    **Unauthorized Distribution of Information.**   Distributing, or
> exchanging, without authorization, any TriNet proprietary, confidential
> or trade secret information with any third party.
>
> 3.    **Access Beyond Need-to-Know.**   Accessing Information,
> Technology Resources or a customer's account for any purpose other
> than conducting the colleague's assigned job duties, even if the
> colleague has authorized access to such Information, Technology
> Resources or customer's account.
>
> 4.  **Modification of TriNet Intellectual Property.**  Unlawfully using
> or modifying any TriNet logo, trademark, service mark, slogan, or other
> intellectual property of TriNet, including advertising materials.
>
> . . . .
>
> 7.  **Violating Others' Rights.**  Violating the rights of any person or
> TriNet protected by trademark, trade dress, right of publicity/privacy,
> copyright, trade secret, patent or other intellectual property right, or
> similar laws or regulations.  To avoid violating the rights of third
> parties, as a general rule, colleagues should not use, copy or post any
> content, information, text or images that have been created by, or are
> owned by, others including content on the Internet, unless TriNet has
> secured the right to do so.

36.    A second electronic communications policy at TriNet is known as the

the Confidential Information Policy.  That policy provides in part:

Confidential or proprietary information includes all information that has or could have commercial business value or other utility in TriNet's business, or the unauthorized disclosure of which could be detrimental to TriNet's interests, whether or not such information is specifically identified as confidential information by TriNet.  By a way of example and not limitation, confidential information includes any and all information, whether or not meeting the legal definition of trade secret, concerning:  the Company's business plans, strategies, budgets, sales, projections, forecasts, financial and operating information, business contracts, databases, financial and account numbers, HIPAA protected medical information, customer and vendor information, advertising and marketing plans, proposals, training materials and methods, proposed services and products and other information not available to the public.

37.     The Confidential Information policy protects confidential information by, among other things, prohibiting its improper disclosure:

Regardless of whether information is specifically marked as confidential, it is each colleague's responsibility to keep confidential information in confidence (except as otherwise allowed by law).  You must not use, reveal, or divulge any such information unless it is necessary for you to do so in performance of your duties (or except as otherwise allowed by law).  All confidential and/or proprietary information is the property of TriNet, and you are obligated to maintain its confidentiality even after the termination of your employment regardless of the reason your employment ended.

38.     Throughout this Complaint, the Ethics Code, the Handbook, the Technology Policy and the Confidential Information policy shall be referred to as the "Security Policies."

39.     TriNet derives substantial benefit from its Confidential Information. Among other things, TriNet's Confidential Information is valuable in allowing TriNet to (i) identify potential customers; (ii) devise and implement sales and

marketing strategies targeted to specific customers or industries; (iii) competitively price its products and services to prospective and actual customers; (iv) determine those customers that are most profitable for the company; and (v) make sound financial business decisions.

40.    TriNet would be substantially and irreparably harmed if its Confidential Information were publicly disclosed or disclosed to one or more of its competitors like Vensure.   For example, if a competitor obtained TriNet's Confidential Information regarding prospective or actual customers' anticipated revenues, the competitor could use that information to target TriNet's most valuable and profitable customers.   As another example, if a competitor obtained TriNet's Confidential Information regarding when its customers' contracts with TriNet were expiring, the competitor could use that information to identify customers to target for solicitation and to time the solicitations with the expiring contract.   As one final example, if a competitor obtained confidential sales and other information about TriNet's personnel, the competitor could use that information to target TriNet's most-valued, successful and profitable employees.

### Pigliavento's Improper and Unlawful Transmission, Misappropriation, Disclosure and/or Use of TriNet's Confidential Information

41.    Pigliavento breached his PIIA, fiduciary duty to TriNet, TriNet's Security Policies, and state and federal law by improperly and unlawfully accessing,

transmitting, disseminating, disclosing, and/or using TriNet's Confidential Information to benefit himself and his new employer, Vensure.

42.    For example, on February 14, 2020, only four days before Pigliavento informed TriNet that he was resigning, Pigliavento sent a document to his personal Gmail email account (kane3673@gmail.com) entitled "FS Q1 Winboard 2-10." (the "Highly-Confidential Customer Spreadsheet").

43.    The Highly-Confidential Customer Spreadsheet contained a wealth of TriNet's highly-confidential and proprietary information, including information about all of TriNet's financial services industry customers from January 2018 through April 2020.  The Highly-Confidential Customer Spreadsheet included customer names, customer size, financial data regarding each customer, and information regarding the TriNet employee(s) responsible for soliciting each customer.  By including the TriNet employee responsible for the solicitations, the Highly-Confidential Customer Spreadsheet made it possible for Pigliavento to determine the territory and market from which that deal originated.

44.    The information contained within the Highly-Confidential Customer Spreadsheet is Confidential Information.

45.    The Highly Confidential Customer Spreadsheet contains confidential and proprietary information that, if disclosed outside of TriNet, is likely to cause TriNet irreparable harm.  Among other things, the information could be used by

TriNet's competitors to unfairly compete against TriNet.   For example, the spreadsheet could allow TriNet's competitors to know: (i) which businesses TriNet is working with within the financial services industry; (ii) the specific details of the relationship TriNet has with its financial services industry clients; and (iii) the amount of revenue and/or profits each customer has generated or is projected to generate (thereby allowing TriNet's competitors, such as Vensure, to target TriNet's most profitable customers).

46.    Pigliavento had no legitimate business reason to access or send the Highly-Confidential Customer Spreadsheet to himself only four days before disclosing to TriNet that he was going to become a Regional Sales Manager for one of TriNet's competitors, Vensure.

47.    Pigliavento was not authorized to send the Highly-Confidential Customer Spreadsheet to his personal Gmail account, particularly as he was preparing to leave TriNet to work for a competitor.

48.    Upon information and belief, Pigliavento has accessed, reviewed, disclosed and/or used information contained within the Highly-Confidential Customer Spreadsheet during his employment with Vensure including, without limitation, providing the information to Vensure, using the information to identify prospective customers for Vensure, and/or soliciting customers on the list to terminate their business relationship with TriNet and to move their business to

Vensure.  Further, upon information and belief, Vensure has knowingly permitted and/or allowed Pigliavento to use TriNet's confidential information to benefit Vensure.

49.    Pigliavento's improper conduct is not limited to his unlawful transmission of the Highly-Confidential Customer Spreadsheet.  Upon information and belief, Pigliavento has used other TriNet Confidential Information – *e.g.*, information about the sales and/or profits generated by specific TriNet employees - to directly and/or indirectly identify, recruit and/or solicit TriNet's employees to terminate their employment with TriNet and to become employed by Vensure.  Upon information and belief, Vensure has permitted and allowed Pigliavento to engage in such unlawful conduct.  Indeed, upon information and belief, Vensure's Senior Vice President of Recruiting Services, Walter Sabrin, has coordinated with Pigliavento to improperly identify, solicit and recruit TriNet employees, including, without limitation, the following employees: Julianne Randolph, Chad Todora, Ervin Garibovic, Tyler McCaw and/or Scott Hagen.

## COUNT I

### Breach of Contract (PIIA)

50.    The allegations in Paragraphs 1 through 49 are incorporated by reference as if stated fully herein.

51.    On March 30, 2016, Pigliavento executed his PIIA.  *See* Exhibit A.

52.     The PIIA is a valid and binding contract between TriNet and Pigliavento.

53.     TriNet performed its duties and obligations under the PIIA.

54.     Paragraph 1 of the PIIA prohibits Pigliavento from "directly or indirectly disclos[ing] to any person or entity, or us[ing], except for the sole benefit of [TriNet], any of [TriNet]'s confidential or proprietary information or trade secrets (collectively, 'Company Information')."   Paragraph 1 of the PIIA applies both "during and after" Pigliavento's employment with TriNet.

55.     The PIIA defines "Company Information" as including, among other things, TriNet's "business plans"; "pricing strategy and cost data"; "lists of current and potential customers"; "strategies, forecasts and other marketing information and techniques"; "sales practices, strategies, methods, forecasts, compensation plans, and other sales information"; and "information about [its] supplier, vendor and contractor relationships such as contact person(s), pricing and other terms."

56.     Paragraph 2 of the PIIA prohibits Pigliavento, both during and after his employment, from disclosing or using "Third Party Information," except in connection with his work for TriNet.  The PIIA defines "Third Party Information" as confidential or proprietary information that TriNet receives from third parties.

57.     Paragraph 5 of the PIIA prohibits Pigliavento from using "Company trade secret information to attempt to call on, solicit, or take away any clients or prospects of the Company except on behalf of the Company."

58.     Pigliavento breached his PIIA by, *inter alia*, directly or indirectly accessing, transmitting, disclosing, and/or using TriNet's "Company Information" and "Third Party Information" for his own personal benefit and/or for the benefit of his new employer, Vensure.

59.     For example, on February 14, 2020, only four days before Pigliavento disclosed to TriNet that he was resigning to work for Vensure, Pigliavento sent the Highly-Confidential Customer Spreadsheet to his personal Gmail email account (kane3673@gmail.com).   That spreadsheet contained Confidential Information about all of TriNet's financial services industry clients from January 2018 to April 2020, including, without limitation, the customer's name, the customer's anticipated revenue, and the status of the company's relationship with TriNet.

60.     Pigliavento was not authorized to send to his personal email and keep the information on the Highly-Confidential Customer Spreadsheet.

61.     Pigliavento had no legitimate business reason to send the Highly-Confidential Customer Spreadsheet to his personal Gmail email account four days before disclosing to TriNet that he was leaving the company to work for a competitor.

62.    Pigliavento was not authorized to send the Highly-Confidential Customer Spreadsheet to his personal Gmail email account four days before disclosing to TriNet that he was leaving the company to work for a competitor.

63.    In addition, upon information and belief, Pigliavento improperly used and/or disclosed TriNet's Confidential Information to, directly and/or indirectly, identify, recruit and/or solicit TriNet employees to terminate their employment with TriNet and to work for Vensure.   Upon information and belief, Pigliavento coordinated and conspired with Vensure employees, including, without limitation, Watler Sabrin, when engaging in these breaches.

64.    Under Paragraph 4 of the PIIA, when Pigliavento resigned from TriNet, he was required to return to TriNet the company's property and Confidential Information in his possession:

> **4.**    **Return of Company Property.**  When I leave the employ of the Company, I will deliver to the Company (and will not keep in my possession, copy, or recreate or deliver to anyone else in whole or in part) any and all items including but not limited to files, drawings, notes, notebooks, memoranda, specifications, records, business plans and forecasts, financial information, sales materials, customer and prospective customer lists, reports, programs, proposals, specifications[,] computer-record information (including emails), tangible property (including but not limited to laptop/desktop computers, flash drives, CD-ROMs, cell phones, blackberries, tablets and other PDA devices), building entry/access cards, identification badges and keys, devices, and documents, together with all copies thereof (in whatever medium recorded) and any other property or material containing or disclosing Company Information or Third Party Information.  I further agree that any property owned by the Company, wherever located, including disks and other storage media, computers,

filing cabinets, desks/desk drawers, or lockers, is subject to inspection by Company personnel at any time during my employment and after, with or without notice.

*See* Exhibit A, ¶ 4.

65.     Pigliavento breached Paragraph 4 of the PIIA by failing to return to TriNet its property and Confidential Information when he resigned.

66.     For example, Pigliavento had, and upon information and belief still has, possession of emails, spreadsheets and/or documents containing TriNet information, including, without limitation, the Highly-Confidential Customer Spreadsheet.

67.     The conduct described in Paragraphs 50 through 66 above also violated TriNet's Security Policies.

68.     Pigliavento's breaches of his PIIA have caused, and continue to cause, TriNet irreparable and other harm.

## COUNT II
## BREACH OF FIDUCIARY DUTY

69.     The allegations in Paragraphs 1 through 49 are incorporated by reference as if stated fully herein.

70.     During the time that Pigliavento was employed by TriNet, Pigliavento and TriNet maintained a fiduciary relationship.

71.     During the time that Pigliavento was employed by TriNet, Pigliavento had a fiduciary duty to act primarily for the benefit of TriNet on matters relating to his employment and TriNet's business.

72.     During the time that Pigliavento was employed by TriNet, Pigliavento had a fiduciary duty not to divert a TriNet business opportunity for his own personal benefit or for the benefit of his new employer, Vensure.

73.     During the time that Pigliavento was employed by TriNet, Pigliavento had a fiduciary duty not to misappropriate TriNet's Confidential Information or to use TriNet's Confidential Information for his own personal benefit or for the benefit of any entity other than TriNet, including his new employer Vensure.

74.     Pigliavento breached his fiduciary duty to TriNet by, *inter alia*, misappropriating TriNet's Confidential Information and by improperly disclosing it to third parties.  Examples of Pigliavento's breaches include, without limitation, sending to his personal Gmail email account the Highly-Confidential Customer Spreadsheet while he was still employed by and had a fiduciary duty to TriNet.  The details of this and other improper acts are described in Paragraphs 14 through 49 above, which are incorporated herein by reference.

75.     Pigliavento's breaches of his fiduciary duty have caused, and continue to cause, TriNet harm.

76.     As a result of Pigliavento's breaches of fiduciary duty, TriNet is entitled to recover not only the actual damages caused by Pigliavento's breaches, but also any compensation TriNet provided to Pigliavento during the period in which he was disloyal or otherwise breached his fiduciary duties.

77.     Pigliavento's breaches of fiduciary duty were knowing, intentional, willful, and malicious, and therefore TriNet is entitled to recover punitive damages.

## COUNT III
## VIOLATION OF FLORIDA DECEPTIVE AND
## UNFAIR TRADE PRACTICES ACT

78.     The allegations in Paragraphs 1 through 49 are incorporated by reference as if stated fully herein.

79.     Pigliavento, to benefit himself and Vensure, engaged in the unfair methods of competition, unconscionable acts or practices, and unfair and deceptive acts or practices alleged herein.

80.     The unfair methods of competition, unconscionable acts and practices, and unfair or deceptive acts in which Pigliavento engaged in include, without limitation, misappropriation of trade secrets for the benefit of himself and Vensure in violation of DTSA and FUSTA.   For example, Pigliavento misappropriated TriNet's Highly-Confidential Customer Spreadsheet.

81.     Further, upon information and belief, Pigliavento improperly used and/or disclosed TriNet's Confidential Information to, directly and/or indirectly, identify, recruit and/or solicit TriNet employees to terminate their employment with TriNet and to work for Vensure.   Upon information and belief, Vensure has permitted and allowed Pigliavento to engage in such unlawful conduct.  Indeed, upon information and belief, Vensure's Senior Vice President of Recruiting Services,

Walter Sabrin, has coordinated with Pigliavento to improperly identify, solicit and recruit TriNet employees, including, without limitation, the following employees: Julianne Randolph, Chad Todora, Ervin Garibovic, Tyler McCaw and/or Scott Hagen.

82.    These unfair methods of competition, unconscionable practices, and unfair and deceptive acts, are prohibited by Fla. Stat. § 501.201, the Florida Deceptive & Unfair Trade Practices Act ("FDUTPA").

83.    As a direct and proximate result of Pigliavento's violations of the FDUTPA, TriNet has suffered and will continue to suffer economic losses and irreparable injuries.

84.    The Court has jurisdiction to enjoin the past, current and future violations of the FDUTPA pursuant to Fla. Stat. § 501.211(1), and is authorized to award actual damages for such violations pursuant to Fla. Stat. § 501.211(2).  TriNet is also entitled to recover its attorneys' fees incurred in the prosecution of this action, pursuant to Fla. Stat. § 501.2105.

## COUNT IV
## DEFEND TRADE SECRETS ACT (DTSA)

85.    The allegations in Paragraphs 1 through 49 are incorporated by reference as if stated fully herein.

86.    Under 18 U.S.C. § 1836(b)(1), TriNet may bring a civil cause of action against Pigliavento for misappropriation of TriNet's trade secrets.

87.     TriNet is the owner of its Confidential Information, *i.e.*, TriNet is the entity holding rightful, legal, and/or equitable title rests of the Confidential Information. *See* 18 U.S.C. § 1839(4).

88.     TriNet's Confidential Information comprises trade secrets as it is a form of business that includes patterns, plans, compilations, program devices, methods, techniques, processes, or procedures, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing. 18 U.S.C. § 1839(3).  This trade secret information derives independent economic value from not being generally known and not being readily ascertainable through proper means.  18 U.S.C. § 1839(3)(B).  Moreover, TriNet has undertaken reasonable efforts under the circumstances to maintain its secrecy, including making employees subject to (i) the PIIA and (ii) TriNet's Security Policies, which contain clear and conspicuous prohibitions against unauthorized acquisition and/or use of Confidential Information.   18 U.S.C. § 1839(3)(A).

89.     TriNet's Confidential Information is used to provide services to clients around the United States, and thus is used in, and intended for use in, interstate commerce.  18 U.S.C. § 1836(b)(1).

90.     Pigliavento has misappropriated TriNet's Confidential Information by acquiring Confidential Information on his personal email account, including the

Highly-Confidential   Customer   Spreadsheet.     18   U.S.C.   §§   1839(5)(A), 1839(5)(B)(i).

91.     Pigliavento's misappropriation of Confidential Information was perpetrated through improper means, *i.e.*, breaching his duty to maintain secrecy under his PIIA and TriNet's Security Policies.  18 U.S.C. § 1839(6)(A).  Further details of Pigliavento's improper acts are described in Paragraphs 14 through 49 above, which are incorporated herein by reference.

92.     Pigliavento's misappropriation of TriNet's Confidential Information was willful and malicious. 18 U.S.C. § 1836(b)(3)(C).

93.     Pigliavento's misappropriation has caused, and continues to cause, TriNet harm.

94.     Through this action, TriNet seeks to recover the actual damages caused by the misappropriation as well as the unjust enrichment that inured to Pigliavento as a result of the misappropriation.  18 U.S.C. § 1836(b)(3)(B)(i).  In addition, TriNet seeks to recover exemplary damages and attorneys' fees and costs.  18 U.S.C. §§ 1836(b)(3)(C), 1836(b)(3)(D).

## COUNT V
## FLORIDA UNIFORM TRADE SECRETS ACT (FUTSA)

95.     TriNet realleges and incorporates herein by reference the allegations contained in Paragraph Nos. 1 through 49 above as if set forth fully herein.

96.     Under the Florida Uniform Trade Secrets Act, Fla. Stat. § 688.001, *et seq*., TriNet may bring an action for damages and injunctive relief.

97.     Pigliavento misappropriated numerous TriNet trade secrets related to its customers, business and methodologies, and systems and tools used for the services it provides to its customers.

98.     The trade secrets misappropriated by Pigliavento derive independent economic value by virtue of not being generally known to, and not being readily ascertainable by, other persons who can obtain economic value from its disclosure or use.

99.     TriNet takes reasonable measures to maintain the secrecy of and protect its trade secrets, including limiting access to them and preventing anyone from accessing such information who is not subject to nondisclosure obligations.

100.   Pigliavento, through his employment and engagement with TriNet, acquired, had access to, and had direct knowledge of TriNet's trade secrets as described above.

101.   Pigliavento misappropriated TriNet's Confidential Information through improper means, including by taking the information in breach of his PIIA and TriNet's Security Policies.

102.   At the time Pigliavento misappropriated TriNet's Confidential Information, he knew or had reason to know that he obtained the Confidential

Information through improper means.  Indeed, Pigliavento's PIIA and TriNet's Security Policies, as well as his own job duties, put Pigliavento on notice that the Confidential Information he misappropriated was a trade secret and that he was not permitted to use it for his own personal benefit or for the benefit of Vensure.

103.   Pigliavento was obligated by contract and by applicable law, to refrain from disclosing and/or using TriNet's trade secrets, including to his new employer Vensure.

104.   TriNet did not provide Pigliavento with express or implied consent to misappropriate its Confidential Information, particularly including the Highly-Confidential Customer Spreadsheet.

105.   As a direct and proximate result of Pigliavento's misappropriation, disclosure, and use of TriNet's trade secrets in violation of the FUTSA, TriNet has suffered and will continue to suffer immediate and irreparable injury to its business, goodwill, and income.  This injury, while substantial, may be difficult to calculate with precision.

106.   In addition to causing TriNet to suffer monetary damages, Pigliavento has caused TriNet to suffer damages for which it has no adequate remedy at law to protect it from the unlawful and continuing misappropriation, disclosure, or use of its trade secrets by Pigliavento.

107.   The threat of harm to TriNet in the absence of injunctive relief far outweighs the threat of harm to Pigliavento if an injunction is granted.  TriNet faces substantial financial loss, loss of goodwill, and loss of its competitive position in the marketplace, whereas the only "hardship" imposed on Pigliavento would be to prevent it from reaping any illicit gain or benefit from misappropriation, disclosure, and use of TriNet's trade secrets.

108.   The public interest would be served by granting the relief sought in that the public clearly favors preventing entities such as Pigliavento from profiting from his improper and unlawful conduct.

109.   The misappropriation by Pigliavento was willful and malicious. Accordingly, TriNet is entitled to an award of exemplary damages and attorneys' fees pursuant to Fla. Stat. § 688.005.

## **PRAYER FOR RELIEF**

WHEREFORE, TriNet prays for a judgment as follows:

(1)   Judgment in favor of TriNet against Pigliavento;

(2)   An injunction against Pigliavento and all parties working in concert with him;

(3)   An Order allowing TriNet to recoup the compensation it paid Pigliavento during the period he was disloyal;

(4)   An award of actual and compensatory damages;

(5)     An aware of punitive and exemplary damages;

(6)     An award of pre-judgment interest;

(7)     An award of post-judgment interest;

(8)     An award of reasonable attorneys' fees, costs, and expenses; and

(9)     Such further relief as the Court deems just and proper.

Dated this 28th day of August, 2020.

> Respectfully submitted,
>
> /s/Catherine H. Molloy
> Catherine H. Molloy
> Florida Bar No. 33500
> Email: molloyk@gtlaw.com
> **GREENBERG TRAURIG, P.A.**
> 101 E. Kennedy Boulevard
> Suite 1900
> Tampa, Florida  33602
> Telephone: (813) 318-5700
> Facsimile:  (813) 318-5900
>
> Steven J. Rosenwasser
> (*pro hac vice forthcoming)*
> rosenwassers@gtlaw.com
> **GREENBERG TRAURIG, LLP**
> Terminus 200
> 3333 Piedmont Road NE
> Suite 2500
> Atlanta, GA 30305
> Telephone: (678) 553-2100
> Facsimile: (678) 553-2212
>
> *Attorneys for TriNet USA, Inc.*